**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**FELICIA MARIE DYER,**

    **Plaintiff,**

    v.

**KARRI OSTERHOUT, MICHAEL
MARTIN, RADWAN MARDINI,
MILLICENT WARREN, ANTHONY
STEWART, ANNETTE TELLAS,
LATASHA BOA, STANLEY BRAGG,
LARRY SAUNDERS,**

    **Defendants.**

_____/

**Case No. 15-cv-12867**

**District Judge David M. Lawson**

**Magistrate Judge Mona K. Majzoub**

## REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' Motion for Summary Judgment. (Docket no. 80.) Defendants request the Court to grant summary judgment in their favor and dismiss Plaintiff's amended complaint in its entirety. (*Id*.) This case was referred to the undersigned for submission of reports and recommendations as may be necessary and other duties as designated in 28 U.S.C. § 636(b)(1)(B). (Docket no. 20.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.   RECOMMENDATION**

The undersigned recommends that Defendants' Motions for Summary Judgment (docket no. 80) be **GRANTED IN PART** and **DENIED IN PART**.  The Court should dismiss Plaintiff's claims under (1) RLUIPA, (2) the "redress of grievances" clause of the First Amendment, (3) the Eighth Amendment, and (4) the Fourteenth Amendment.  The Court should

not dismiss Plaintiff's claims under (1) the "free exercise" clause of the First Amendment, or (2) the "retaliation" theory based on the "free speech" clause of the First Amendment.

## II.   REPORT

### A.   Background

Plaintiff Felicia Dyer, a prisoner at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, filed this matter under 42 U.S.C. § 1983, alleging that Defendants, employees of the Michigan Department of Corrections ("MDOC"), violated the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by impeding her right to practice Judaism and by retaliating against her for filing grievances. (*See* docket no. 1.)

According to Plaintiff, Jewish services were cancelled for a period of "six or seven months" beginning in May of 2013 because prison officials were unable to obtain volunteers to lead services. (Docket no. 80-2, p. 5.) Plaintiff testified that "eventually, [Defendant] Chaplain Mardini came and sat in and that's how we were able to have services," but that Defendant Mardini "was irritated with sitting in," and during one incident "like blew up at us" and spit in a garbage can "in contempt" as he walked out of the service. (*Id*. at 6.)

Plaintiff filed a grievance in November of 2014 alleging that Defendant Tellas failed to take adequate steps to procure volunteers to lead Jewish services. (Docket no. 84, pp. 31, 35, 62.) In particular, Plaintiff contended that Defendant Tellas "only made four attempts to locate a volunteer [over the course of] 7 months, two attempts were made to the same person 'Mr. Weiss,' and one other attempt [was] made on the day she responded to this grievance." (*Id.* at 31.)

In December of 2014, Plaintiff filed a grievance alleging that "Jewish services has [*sic*] not received any new Rabbitic [*sic*] / Messianic video material" and that "[Defendant] Deputy Osterhaut refus[ed] to contact Messianic Jewish parishs [*sic*] to come in and teach [or] to appoint someone to lead [services]." (*Id.* at 35.)  With respect to the latter issue, Plaintiff asserted that Defendant Osterhout denied her request to lead Jewish services. (*Id.* at 79, 80.)  On December 30, 2014, Plaintiff filed a grievance contending that, in retaliation for filing previous grievances, prison officials failed to place her on the "call-out" list for Hanukkah services on December 20, 2014. (*Id.* at 51.)

Plaintiff further asserts that in April of 2015, Defendant Saunders failed to provide supplies for a Passover Seder, instead using a "pictorial Seder" to depict traditional food items. (*Id.* at 20.)  Plaintiff testified that "[t]he next Seder, [Defendants] did take into consideration our request, and we were given a proper Seder." (Docket no. 80-2, p. 8.)

In October of 2015, Plaintiff filed a grievance alleging that she was not added to the "call out" for Jewish services on September 30, 2015. (Docket no. 84, p. 71.)  Defendant Tellas responded by noting that "[n]one of the Jewish inmates were added to the callout for 9/30/15 [because Defendant Tellas] did not realize until this day that the Jewish inmates were not [automatically] added to every Wednesday." (*Id.* at 15.)  Defendant Tellas went on to explain that she "d[id] not access the Jewish callout as often as the other ones, since [she did] not have high demand for Jewish services." (*Id.*)

Finally, Plaintiff contends that Defendants failed to provide Hanukah services on December 14, 2015, the eighth day of Hanukah in that year. (*Id.* at 86.)  Defendant Tellas asserted that the Jewish inmates were able to attend services for each of the eight nights between December 6 and December 13, 2015. (*Id.*)  Plaintiff testified that a similar dispute arose in 2016,

3

but that Jewish inmates were able to celebrate all eight nights of Hanukah in 2017. (Docket no. 80-2, p. 9.)

Plaintiff filed the present complaint on August 7, 2015, alleging that Defendants violated the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and RLUIPA. (Docket no. 1.) On June 6, 2016, Plaintiff filed a document titled "Response to Request for a More Definite Statement," which the Court interpreted as an amended complaint. (Docket no. 22.) Defendants now move for summary judgment in their favor. (Docket no. 80.)

### B. Standard of Review

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly

4

supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.**    **Analysis**

        *1.*    *RLUIPA*

Defendants move for summary judgment on Plaintiff's RLUIPA claims, contending that the relief Plaintiff seeks is not available under the statute. (Docket no. 80, p. 12.) RLUIPA prohibits state and local governments from placing "a substantial burden" on the "religious exercise" of any inmate unless they establish that the burden furthers a "compelling governmental interest" and does so in the "least restrictive" way. 42 U.S.C. § 2000cc-1(a).

Defendants assert that "RLUIPA does not permit money damages against state prison officials, even when the lawsuit targets the defendants in their individual capacities." (*Id.*) In support, Defendants cite *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014), in which the Sixth Circuit rejected a "putative individual-capacity, money-damages condition in RLUIPA [as] inappropriate." Plaintiff's reliance on the Eleventh Circuit's interpretation of RLUIPA (*see* docket no. 84, pp. 1-2) does not overcome *Haight*'s clear and binding analysis of the issue. Accordingly, the Court should dismiss Plaintiff's claims for monetary relief under RLUIPA.

Defendants additionally request that the Court dismiss Plaintiff's claim for injunctive relief under RLUIPA, asserting that "[t]here is no basis in law for this Court to order the removal of [Defendant] Tellas from her job" and that "RLUIPA does not give courts the authority to

5

remove government officials form [*sic*] their positions." (Docket no. 80, p. 13.) Plaintiff advances no authority in support of her request for an injunction removing Defendant Tellas from her position. Moreover, such relief appears beyond the scope of RLUIPA, which provides that "[a] government may avoid the preemptive force of any provision of this chapter by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden." 42 U.S.C. § 2000cc-3. Accordingly, the Court should dismiss Plaintiff's claim for an injunction directing the MDOC to terminate Defendant Tellas.

### 2. First Amendment: Redress of Grievances

Defendants move to dismiss Plaintiff's claims under the First Amendment, alleging that Plaintiff "does not have a right to have prison officials respond to her grievances in a way she believes is appropriate." (Docket no. 80, p.15.) In her amended complaint, Plaintiff describes this claim as follows:

- "Defendants Boa and Bragg held step two grievances[,] changing identifier numbers[,] delaying the grievance procedure and decreasing the time plaintiff had to file step two grievance in 2014-2015."

- "Defendants Boa and Bragg changed the date on a request from plaintiff for step two grievance [in] February 2015."

- "Defendant Boas [*sic*] and Bragg wrote identifier numbers illegible [*sic*] December 2014 causing a delay in request for step two grievance forms, making it untimely."

(Docket no. 22, p. 9.)

Relying on *Skinner v. Govorchin*, 463 F.3d 518 (6th Cir. 2006), Defendants assert that "a prison official's failure to appropriately respond to a grievance fails to state a claim." (Docket

6

no. 80, p. 15.) In *Skinner*, the Sixth Circuit upheld dismissal of an inmate's claim that the prison warden "failed to respond appropriately to [the inmate's] grievance appeal." *Skinner*, 463 F.3d at 525.

Plaintiff's redress-of-grievances claims, which allege that Defendants tampered with and/or obstructed her grievances, are distinguishable from those at issue in *Skinner*, in which the plaintiff merely took issue with an unfavorable decision. Nevertheless, for the reasons set forth below, Plaintiff fails to establish that Defendants violated her right to petition the Government for a redress of grievances.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with h[er] status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Inmates have a constitutional right of access to the courts, which is partially grounded in "the right of the people . . . to petition the Government for a redress of grievances." *Hill v. Dailey*, 557 F.3d 437, 438-39 (6th Cir. 2009). But that right is not absolute. The Petition Clause affords petitioners only a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Accordingly, courts have upheld certain restrictions on an inmate's access to a grievance resolution procedure. *See*, *e.g.*, *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001) (holding that placement of an inmate on a "modified grievance access" list, which required him to obtain permission from the grievance coordinator to file a grievance, did not violate his First Amendment right to seek redress of grievances). *See also*, *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 447 (6th Cir. 2005) ("[T]here is no constitutional right to a detailed opinion from a grievance coordinator in a prison grievance system," and the

7

plaintiff "at all times could have filed suit in federal court had he believed the grievances were improperly dismissed.").

Although the parties have not raised any binding authority regarding claims of grievance tampering, a case from the Seventh Circuit persuasively analyzes the issue. In *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011), the court determined that "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [the plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."

Based on the above analysis, the Court should dismiss Plaintiff's redress-of-grievances claims.

### 3. First Amendment: Free Exercise

Plaintiff contends that "[t]he actions of Defendants Osterhout, Martin, . . . Mardini, Warren, Stewart, Tellas, Saunders, Ansari, [and] Hargrove denied Plaintiffs [*sic*] First Amendment Right to Free Exercise . . . by denying religious service, denying observances of Jewish Holy Days, placing a substantial burden on Religious practices, and treating Jewish services differently than other Religious services at Huron Valley Correction Facility." (Docket no. 22, p. 12.)

Defendants' motion for summary judgment requests that the Court dismiss Plaintiff's First Amendment claims, but does not address Plaintiff's free-exercise claim. Accordingly, the Court should not dismiss that claim.

### 4. First Amendment: Retaliation

8

Plaintiff additionally contends that several of the Defendants retaliated against her for filing grievances. As stated in her amended complaint, Plaintiff asserts that:

- "Defendants Tellas, Osterhout, [and] Mardini retaliated against [P]laintiff in December 2014, for a grievance filed December 2014, by removing [P]laintiff from special Hanukka service."

- "Defendant[s] Tellas, Osterhout, [and] Mardini, retaliated against Plaintiff by disregarding request for supplies after grievances were filed in 2013 [and] 2014."

- "Defendants Osterhout, Tellas, [and] Mardini retaliated against Plaintiff and Jewish services by placing restrictions on Sabbath Prayers, and Torah reading during Jewish service after Plaintiff informed them this was their procedure and grieved for not having a volunteer [in] 2014-2015."

(Docket no. 22, p. 9.)

Defendants' motion for summary judgment requests that the Court dismiss Plaintiff's First Amendment claims, but does not address Plaintiff's retaliation claims. Accordingly, the Court should not dismiss those claims.

### 5. Eighth Amendment

Defendants move the Court to dismiss Plaintiff's claims under the Eighth Amendment because Plaintiff "admitted she never suffered any physical injury at the hands of [Defendant] Mardini." (Docket no. 80, p. 16.)

Plaintiff alleges that "[o]n December 21, 2013 . . . Defendant Mardini . . . show[ed] contempt for our [Jewish] services . . . [by] spitting in the trash can upon his departure, after he yelled at [Charmel] Allen, and [Plaintiff] Dyer, being aggressive, [and] almost hitting [Charmel] Allen," and that these actions were "in violation of the 8th Amendment Right to be free from cruel, and unusual punishment." (Docket no. 22, pp. 6, 12.)

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior

9

showing of physical injury or the commission of a sexual act.  42 U.S.C. § 1997e.  Although § 1997e(e) does not define "physical injury," the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than *de minimis*.  *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) and *Luong v. Hatt*, 979 F. Supp. 481, 485 (N.D. Tex. 1997)).  Moreover, verbal abuse and harassment of a prisoner by a prison official does not constitute the type of infliction of pain that the Eight Amendment prohibits.  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Because Plaintiff does not allege that Defendant Mardini's actions resulted in any physical injury, her Eighth Amendment claim is barred by § 1997e.  Accordingly, the Court should dismiss this count.

### 6. *Fourteenth Amendment*

Defendants move the Court to dismiss Plaintiff's claims under the Fourteenth Amendment, contending that Plaintiff fails to provide evidence "that the Defendants' actions constituted disparate treatment of similarly-situated individuals" and/or "that Defendants' behavior was motivated by purposeful discrimination."  (Docket no. 80, pp. 17-18.)

Plaintiff alleges that Defendants violated the Equal Protection Clause of the Fourteenth Amendment by treating Jewish prisoners differently than prisoners practicing other religions.  In particular, Plaintiff asserts that:

- Defendants "did not contact other sects of Judaism [in order to procure volunteers to lead services], even though religions such as Protestant has other sects of volunteer to assure they have services."

- Defendants "allow[ed] Protestant services to have three or more services per week, while Jewish service was cancelled for approximately seven months [in] 2013."

10

- Defendants "took away Jewish services' Sabbath day meeting on Saturday, while slots have been cleared to hold services on Sunday and Saturday for Protestants and Catholics."

- Defendants allowed Native American services to proceed without a volunteer to lead, "while Jewish services was [*sic*] cancelled for about seven months due to not having a volunteer [in] 2013."

- Defendants gave a written test to Jewish prisoners during Passover services, "while other Religions [*sic*] are allowed to attend services to praise and worship."

- Defendants allowed prisoners of other religions to send emails and post sign-up sheets for upcoming events but "refuse[d] to post anything for Jewish services."

- Defendants provided Muslim prisoners with prayer rugs and hijabs, provided Native Americans with materials to smudge, and provided protestant services with communion, "but would not supply Jewish services with Prayer Shaws [*sic*], Torahs or Religious Rabbitical [*sic*] teaching DVDs."

(Docket no. 22, pp. 10-11.)

The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. Am. XIV, § 1. The Clause embodies the principle that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Fundamentally, the Clause protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).

A disproportionate effect does not by itself violate the Equal Protection Clause, even if that effect was foreseen. *United States v. Blewett*, 746 F.3d 647, 659 (6th Cir. 2013) (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). The term "intent" in the context of "intentional discrimination" means more than "awareness of consequences." *Id.* A violation arises only when a public official takes an action "because of," not merely "in spite of," its adverse effects upon an identifiable group. *Id.* The necessary showing of intent may be made in

a variety of ways, including an examination of the "historical background" of the decision and the "specific sequence of events leading up to the challenged decision." *See Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264-68 (1977).

Turning to the facts of this case, Plaintiff fails to demonstrate that the unequal treatment she cites was motivated by a discriminatory purpose. For example, Plaintiff takes issue with Defendant Tellas' statement that she "do[es] not access the Jewish callout as often as the other ones, since [Tellas] do[es] not have high demand for Jewish services." (Docket no. 84, pp. 15, 71.) This evidence, however, suggests only that Defendants treated religions differently based on level of participation. Similarly, Plaintiff relies on affidavits of Protestant, Muslim and Native American inmates, who attest that they are able to practice their respective religions without burdens similar to those that Plaintiff alleges are faced by Jewish prisoners (*id*. at 46-48), but Plaintiff acknowledges that the group of prisoners seeking to engage in Jewish services is "not as big as Protestant services [and] not as big as Native American or Muslim Services." (Docket no. 80-2, p. 12.) In this same vein, Defendant Mardini testifies that "[s]ometimes [Jewish] services were not held due to an inability to secure volunteers to lead Jewish services" and that "[o]ther times there were not enough inmates to support a [Jewish] service." (Docket no. 80-5, p. 3.) In addition, Defendants observe that MDOC Policy Directive (PD) 05.03.150, ¶ V requires that five prisoners be present for a religious group to conduct group religious services. (Docket no. 80, p. 18.)

Based on the record before the Court, Plaintiff fails to demonstrate that Defendants treated Jewish prisoners differently because they were Jewish. Instead, the evidence suggests that Defendants allocated resources based on level of inmate participation. Because such neutral

12

economic considerations do not violate the Equal Protection Clause, the Court should dismiss Plaintiff's claims under the Fourteenth Amendment.

### D. Conclusion

The undersigned recommends that Defendants' Motions for Summary Judgment (docket no. 80) be **GRANTED IN PART** and **DENIED IN PART**. The Court should dismiss Plaintiff's claims under (1) RLUIPA, (2) the "redress of grievances" clause of the First Amendment, (3) the Eighth Amendment, and (4) the Fourteenth Amendment. The Court should not dismiss Plaintiff's claims under (1) the "free exercise" clause of the First Amendment, or (2) the "retaliation" theory under the "free speech" clause of the First Amendment.

### III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not

later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 8, 2018        s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Plaintiff and counsel of record on this date.

Dated: May 8, 2018        s/ Leanne Hosking
Case Manager