UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FELICIA MARIE DYER,**

     **Plaintiff,**

     **v.**

**KARRI OSTERHOUT, MICHAEL**
**MARTIN, RADWAN MARDINI,**
**MILLICENT WARREN, ANTHONY**
**STEWART, ANNETTE TELLAS,**
**LATASHA BOA, STANLEY BRAGG,**
**LARRY SAUNDERS,**

     **Defendants.**

_____/

**Case No. 15-cv-12867**

**District Judge David M. Lawson**

**Magistrate Judge Mona K. Majzoub**

<u>REPORT AND RECOMMENDATION</u>

     This matter comes before the Court on Defendants' second motion for summary judgment. (Docket no. 92.)  Defendants request the Court to grant summary judgment in their favor and dismiss Plaintiff's amended complaint in its entirety.  (*Id.*)  This case was referred to the undersigned for submission of reports and recommendations as may be necessary and other duties as designated in 28 U.S.C. § 636(b)(1)(B).  (Docket no. 20.)  The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

**I.**     **RECOMMENDATION**

     The undersigned recommends that Defendants' Motions for Summary Judgment (docket no. 92) be **DENIED**.

II.   **REPORT**

    A.   **Background**

Plaintiff Felicia Dyer, a prisoner at the Women's Huron Valley Correctional Facility in Ypsilanti, Michigan, ("WHV") filed this matter under 42 U.S.C. § 1983, alleging that Defendants, employees of the Michigan Department of Corrections ("MDOC"), violated the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") by impeding her right to practice Judaism and by retaliating against her for filing grievances.  (*See* docket no. 1.)

According to Plaintiff, Jewish services were cancelled for a period of "six or seven months" beginning in May of 2013 because prison officials were unable to obtain volunteers to lead services.  (Docket no. 80-2, p. 5.)  Plaintiff testified that "eventually, [Defendant] Chaplain Mardini came and sat in and that's how we were able to have services," but that Defendant Mardini "was irritated with sitting in," and during one incident "like blew up at us" and spit in a garbage can "in contempt" as he walked out of the service.  (*Id.* at 6.)

Plaintiff filed a grievance in November of 2014 alleging that Defendant Tellas failed to take adequate steps to procure volunteers to lead Jewish services.  (Docket no. 84, pp. 31, 35, 62.)  In particular, Plaintiff contended that Defendant Tellas "only made four attempts to locate a volunteer [over the course of] 7 months, two attempts were made to the same person 'Mr. Weiss,' and one other attempt [was] made on the day she responded to this grievance."  (*Id.* at 31.)

In December of 2014, Plaintiff filed a grievance alleging that "Jewish services has [*sic*] not received any new Rabbitic [*sic*] / Messianic video material" and that "[Defendant] Deputy Osterhaut refus[ed] to contact Messianic Jewish parishs [*sic*] to come in and teach [or] to appoint someone to lead [services]."  (*Id.* at 35.)   With respect to the latter issue, Plaintiff asserted that

Defendant Osterhout denied her request to lead Jewish services.  (*Id.* at 79, 80.)  On December 30, 2014, Plaintiff filed a grievance contending that, in retaliation for filing previous grievances, prison officials failed to place her on the "call-out" list for Hanukkah services on December 20, 2014. (*Id.* at 51.)

Plaintiff further asserts that in April of 2015, Defendant Saunders failed to provide supplies for a Passover Seder, instead using a "pictorial Seder" to depict traditional food items.  (*Id.* at 20.) Plaintiff testified that "[t]he next Seder, [Defendants] did take into consideration our request, and we were given a proper Seder."  (Docket no. 80-2, p. 8.)

In October of 2015, Plaintiff filed a grievance alleging that she was not added to the "call out" for Jewish services on September 30, 2015.  (Docket no. 84, p. 71.)  Defendant Tellas responded by noting that "[n]one of the Jewish inmates were added to the callout for 9/30/15 [because Defendant Tellas] did not realize until this day that the Jewish inmates were not [automatically] added to every Wednesday." (*Id.* at 15.)  Defendant Tellas went on to explain that she "d[id] not access the Jewish callout as often as the other ones, since [she did] not have high demand for Jewish services." (*Id.*)

Finally, Plaintiff contends that Defendants failed to provide Hanukkah services on December 14, 2015, the eighth day of Hanukkah in that year.  (*Id.* at 86.)  Defendant Tellas asserted that the Jewish inmates were able to attend services for each of the eight nights between December 6 and December 13, 2015.  (*Id.*)  Plaintiff testified that a similar dispute arose in 2016, but that Jewish inmates were able to celebrate all eight nights of Hanukkah in 2017.  (Docket no. 80-2, p. 9.)

Plaintiff filed the present complaint on August 7, 2015, alleging that Defendants violated the First Amendment, the Eighth Amendment, the Fourteenth Amendment, and RLUIPA.  (Docket

no. 1.)  On June 6, 2016, Plaintiff filed a document titled "Response to Request for a More Definite Statement," which the Court interpreted as an amended complaint.  (Docket no. 22.)

On February 12, 2018, Defendants filed their first motion for summary judgment.  (Docket no. 80.)  In a report and recommendation dated May 8, 2018, the undersigned recommended that Defendants' motion be granted in part and denied in part, dismissing Plaintiff's claims under (1) RLUIPA, (2) the "redress of grievances" clause of the First Amendment, (3) the Eighth Amendment, and (4) the Fourteenth Amendment, but not dismissing Plaintiff's claims under (1) the Free Exercise clause of the First Amendment, or (2) the "retaliation" theory based on the Free Speech clause of the First Amendment.  (Docket no. 85.)

On June 5, Defendants objected to the May 8 report & recommendation, contending that the free-exercise and retaliation claims should be dismissed because Plaintiff "indicated at her deposition that she did not have Free Exercise Clause claims [or retaliation claims] against [Defendants]."  (Docket no. 89.)  On June 13, 2018, Defendants filed their second motion for summary judgment on substantially similar grounds.  (Docket no. 92.)

On September 25, 2018, Judge Lawson adopted the May 8 report and recommendation. (Docket no. 97.)  In overruling Defendants' objections, Judge Lawson concluded that the free-exercise and retaliation claims "are adequately set forth in the pleadings, and the defendants, on notice that they had been raised, could have attacked them in their summary judgment motion, ignoring them at their peril."  (*Id.* at 6.)

B.      **Standard of Review**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the

non-moving party's case. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).

Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## C.    Analysis

Two of Plaintiff's claims survived Defendants' first motion for summary judgment: (1) Plaintiff's assertion that Defendants violated the Free Exercise clause of the First Amendment, and (2) Plaintiff's contention that Defendants violated the First Amendment by retaliating against her for filing grievances.  (Docket no. 97.)  Defendants move for summary judgment on these

claims, contending: (1) that Plaintiff "indicated at her deposition that she did not have Free Exercise Clause claims against [Defendants]," (2) that Plaintiff "indicated at her deposition that she did not have retaliation claims against [Defendants]," and (3) that Plaintiff's retaliation claims "simply challeng[e] the sufficiency of the grievance responses."  (Docket no. 92.)

        1.    *Free- Exercise Claim*

Defendants contend that the Court should dismiss Plaintiff's free-exercise claim because "[i]n her deposition [Plaintiff] did not assert that she had any Free Exercise Clause claims against [Defendants] Mardini, Martin Osterhout, Saunders, Stewart, Tellas, and Warren."

In her amended complaint, Plaintiff alleges that "[t]he actions of Defendants Osterhout, Martin, . . . Mardini, Warren, Stewart, Tellas, [and] Saunders, . . . denied Plaintiffs [*sic*] First Amendment Right to Free Exercise . . . by denying religious service, denying observances of Jewish Holy Days, placing a substantial burden on Religious practices, and treating Jewish services differently than other Religious services at Huron Valley Correction Facility."  (Docket no. 22, p. 12.)

Review of Plaintiff's deposition transcript demonstrates that Plaintiff testified in support of this claim.  In particular, Plaintiff alleged the following:

- After the MDOC closed Robert Scott Correctional Facility, Plaintiff was transferred to WHV.  The new facility was unprepared to offer Jewish services, "so [Jewish inmates] didn't have any service, limited supplies, and no one made an effort to procure any."  (80-2, pp. 3–4.)

- Beginning in May of 2013, Defendants Osterhout, Mardini and Martin cancelled Jewish services for a period of six or seven months due to a lack of volunteers to lead services.  Plaintiff offered to lead services, but was denied.  (*Id.* at 5–6.)

- When Jewish inmates requested religious supplies, such as new DVDs and teachings, Defendant Mardini "blew up at [them]," and "hawked up spit in the garbage can in contempt when he walked out of the room."  (*Id.* at 6.)

- When volunteers came to WHV to lead services, Defendant Tellas failed to put Jewish inmates on the callout list, and the volunteers eventually left. (*Id.* at 7–8.)

- Defendant Osterhout stated that Defendant Martin determined that there would not be a Passover Seder at WHV. (*Id.* at 10.)

Defendants seek to capitalize on Plaintiff's failure to label these allegations as violations of the Free Exercise clause. But notwithstanding Plaintiff's failure to precisely enumerate her claims, she testified at length regarding the allegations underlying them.

Defendants offer no authority in support of the assertion that Plaintiff's failure to properly categorize her claims during her deposition is grounds for dismissal. Defendants also take no affirmative steps to identify which particular Defendants had the authority and responsibility to address Plaintiff's concerns. Defendants have not met their burden to show an absence of evidence to support Plaintiff's case. *See Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Accordingly, the Court should not dismiss Plaintiff's free-exercise claim.

## 2. *Retaliation Claim*

Defendants contend that the Court should dismiss Plaintiff's First Amendment retaliation claim because Plaintiff "indicated at her deposition that she did not have retaliation claims against [Defendants Mardini, Osterhout, and Tellas]." (Docket no. 92, p. 9.) In the alternative, Defendants assert that the Court should dismiss Plaintiff's retaliation claims because Plaintiff "is simply challenging the sufficiency of [Defendants'] grievance responses." (*Id.*)

In her amended complaint, Plaintiff asserts that "Defendants Tellas, Osterhout, [and] Mardini retaliated against [P]laintiff in December 2014, for a grievance filed December 2014, by removing [P]laintiff from special Hanukka service." (Docket no. 22, p. 9.) Plaintiff further contends that "Defendants Osterhout, Tellas, [and] Mardini retaliated against Plaintiff and Jewish services by placing restrictions on Sabbath Prayers, and Torah reading during Jewish service after

7

Plaintiff informed them this was their procedure and grieved for not having a volunteer [in] 2014-2015." (*Id.*)

During her deposition, Plaintiff testified in support of this claim as follows:

- In December of 2014, Defendant Tellas omitted Plaintiff from the callout list for Hanukkah services. (Docket no. 80-2, pp. 5, 7–8.)

- Defendant Mardini displayed anger and spit in a garbage can when Plaintiff requested supplies for Jewish services. (*Id.* at 6.)

- Defendant Osterhout prevented Plaintiff from leading Jewsish services because Plaintiff had filed grievances. (*Id.* at 11.)

- Defendant Tellas became unresponsive to Plaintiff's requests for religious materials after Plaintiff filed grievances. (*Id.* at 12.)

It remains to be determined whether these allegations have factual support and/or legal merit. But Defendants' motion does not address those issues. Instead, Defendants simply attempt to benefit from the fact that Plaintiff did not place them under the "retaliation" heading. As noted above, Defendants advance no authority in support of such a quibbling standard. And once more, Defendants make no effort to delineate which individual Defendants might be subject to retaliation claims.

Defendants' alternative argument is more of the same. Defendants cite two passages of Plaintiff's deposition wherein defense counsel "interpreted [Plaintiff's] claim to be one dealing with the failure to respond to grievances." (Docket no. 92, p. 10.) However, as outlined above, Plaintiff pleaded and testified in support of her First Amendment retaliation claim.

Accordingly, the Court should not dismiss Plaintiff's retaliation claim.

**D.     Conclusion**

The undersigned recommends that Defendants' Motions for Summary Judgment (docket no. 92) be **DENIED**.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 29, 2018                s/ Mona K. Majzoub
                                        MONA K. MAJZOUB
                                        UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: November 29, 2018         s/ Leanne Hosking
                                 Case Manager